DOMENGEAUX, Chief Judge.
Eugene Byrd brought this medical malpractice suit against the State of Louisiana, through the Department of Public Safety and Corrections and the Department of Health and Human Resources. After a bench trial, judgment was rendered in favor of Byrd, and damages in the amount of $350,000 were awarded. The State has appealed on the merits and has also raised a procedural issue; we reverse in its favor.

FACTS

In December of 1985, Byrd was seen at Huey P. Long Memorial Hospital in Pineville for gastrointestinal problems consisting of abdominal pain, rectal bleeding, and diarrhea. At the time, Byrd was in the custody of the Department of Public Safety and Corrections pursuant to a criminal conviction and was incarcerated in Alexandria. Byrd went through a battery of tests, but before a diagnosis was made, he was transferred to Hunt Correctional Center in St. Gabriel.
Byrd was treated symptomatically at Hunt by Drs. Michael Hegmann and Paul Nguyen; they made a possible diagnosis of ulcerative colitis. Byrd was then referred to the gas-troenterology clinic at Charity Hospital in New Orleans. By the time Byrd was seen by Dr. John Harrington at Charity, his symptoms had subsided; nevertheless, he was scheduled for further testing. In August of 1986, an endoscopic examination was performed and a fluorescein antibody test was conducted on a biopsy specimen. Based on Byrd’s history of intermittent symptoms, and on the examination and test results, Dr. Harrington made a diagnosis of probable viral or herpetic proctitis, a disease affecting the lower portion of the colon and caused by the herpes virus. Dr. Harrington testified that this disease is subject to periods of *316 exacerbation and remission. Because no medication was available for this condition in 1986, only symptomatic relief could be offered. However, in Byrd’s case, no treatment was necessary because his disease was in a state of remission.
In December of 1986, Byrd experienced a recurrence of his symptoms as had happened periodically throughout the year. He was sent to Earl K. Long Memorial Hospital in Baton Rouge where he was seen by Dr. Ellis Deville, an internist. Dr. Deville treated Byrd’s diarrhea symptomatically and gave him two blood transfusions for anemia, secondary to gastrointestinal blood loss. A surgeon was consulted for treatment of a peri-rectal abscess, and it was determined that a colectomy, or the surgical removal of the colon, was not necessary at that time. Byrd’s condition improved and Dr. Deville decided that an endoscopic examination would not be performed because of the risks involved in that procedure.
Byrd returned to Hunt Correctional Center on December 27, 1986. Several days later he was released from prison and rejoined his family in the Alexandria area. On January 13, 1987, Byrd once again sought medical treatment for a recurrence of diarrhea and rectal bleeding. He was seen by Dr. Tod Engelhardt, a third year general surgery resident at Huey P. Long Hospital.
Dr. Engelhardt performed various tests on Byrd and diagnosed his condition as ulcera-tive colitis, a disease of unknown etiology which can be life threatening without treatment. Dr. Engelhardt was aware that Byrd had previously been diagnosed with herpetic proctitis, a disease that is not usually life threatening and that will go into remission without medical treatment. However, in January of 1987, Byrd’s condition revealed a textbook case of ulcerative colitis and was the worst such case Dr. Engelhardt had ever seen.
For several reasons, Dr. Engelhardt did not repeat the fluorescein antibody test in an effort to determine if Byrd was also suffering from a recurrence of herpetic proctitis. First, Dr. Engelhardt testified that Byrd’s colon was in such poor condition that he would not have been able to obtain a tissue sample that would have been of any use in a biopsy. Second, Byrd’s overall condition required prompt treatment, and Dr. Engel-hardt did not think he could wait several days for an antibody test to be completed. Third, Dr. Engelhardt stated that Byrd definitely had severe ulcerative colitis that necessitated steroid therapy or surgery, regardless of whether he also had an infectious process, such as one caused by the herpes virus, going on as well.
Dr. Engelhardt discussed with Byrd his options which included intensive medical therapy or some type of surgery. Byrd was not ready for surgery and chose medical therapy. As a result, Byrd was given high dose intravenous steroids for 10 days, after which his symptoms improved, but the condition of his colon neither improved nor worsened.
In February of 1987, Byrd’s condition required a total colectomy and his entire colon was removed. A temporary ileostomy was performed which required Byrd to wear a bag on his side for several weeks for collection of bowel contents. Two months after the colectomy and ileostomy were performed, Byrd went back into the hospital for reconstructive surgery, and normal bowel function was restored.[1] Byrd testified that since the surgery, he continues to have diarrhea and rectal bleeding. He also testified that he must watch what he eats and cannot hold a job because he has to go to the bathroom so often.

PROCEDURAL BACKGROUND

Byrd filed suit against the State alleging that its physicians committed malpractice in failing to diagnosis and treat ulcerative colitis prior to January of 1987. Conversely, at trial, Byrd argued and attempted to prove that the diagnosis of ulcerative colitis was actually malpractice which resulted in the need for the colectomy.
According to the State’s counsel, this change in strategy came about when Byrd hired a new attorney and a supplemental *317 pretrial memorandum was filed setting forth the new theory of liability. As a result, the State filed various exceptions and objected to any expansion of the pleadings. The trial judge overruled the objection and exceptions because no formal amendment to the pleadings had been made.
At trial, the State repeatedly objected to any evidence purportedly in support of the claim that the January 1987 diagnosis and treatment constituted malpractice. The trial judge consistently denied the objections. After all the evidence was presented, the matter was taken under advisement. Byrd never attempted to amend his pleadings to properly plead the allegation asserted in his supplemental pretrial memorandum.
In written reasons for judgment, the trial court ruled that Dr. Engelhardt’s diagnosis of ulcerative colitis in January 1987 was wrong. He also found that Dr. Engelhardt’s decision to treat Byrd with steroids was improper and led to a worsening of Byrd’s true condition of herpetic proctitis or colitis, and that treatment resulted in the need for a colectomy.
The trial judge found liability on the part of the State, through the Department of Health and Human Resources. No liability was assessed to the Department of Public Safety and Corrections because the malpractice of Dr. Engelhardt, as found by the trial judge, was committed after Byrd was released from custody.
The State has appealed the ruling of the trial court, raising two issues for our review. The State contends the trial judge committed reversible error in considering and granting relief upon a cause of action not properly pled and therefore not properly before the trial court. The State also contends the trial judge erred in ruling for the plaintiff on the merits of the claim, contrary to the evidence presented.

BURDEN OF PROOF

The plaintiff in a medical malpractice case has the burden of proving the standard of care applicable to the defendant. He must also prove that the standard of care was violated, and as a result the plaintiff suffered injuries that would not have otherwise been incurred. La.R.S. 9:2794.
The plaintiff in the instant ease urged the trial judge to find malpractice on the part of Dr. Engelhardt. In order to prove this contention, Byrd was required to prove the standard of care applicable to a general surgeon such as Dr. Engelhardt. Felice v. Valleylab, Inc., 520 So.2d 920 (La.App. 3d Cir.1987), writs denied, 522 So.2d 562, 563 (La.1988). In Felice, we held that a specialist, such as a third year general surgery resident, is required to exercise the degree of care and possess the degree of knowledge or skill ordinarily exercised and possessed by physicians within their medical specialty. We further held that only those qualified in that specialty may offer evidence of the applicable standards. 520 So.2d at 928.
In addition to proving the applicable standard of care, Byrd was also required to prove that Dr. Engelhardt violated that standard of care, and as a result, injuries were incurred.

REVIEW

We have reviewed this record extensively, examining in detail both the hospital records and the testimony of the treating physicians and experts. We conclude that Byrd did not meet his burden of proof and that the trial court’s ruling in his favor is manifestly erroneous.
The basis of the trial court’s ruling is simply that but for the improper use of steroids by Dr. Engelhardt, Byrd’s colon would not have been removed. This finding is clearly wrong. First, Byrd’s poor condition raised the possibility of a colectomy as early as December 1986, although it was ruled out as Byrd improved. Second, in January, before steroid therapy was initiated, Dr. Engel-hardt offered surgery, i.e., a colectomy, as one of Byrd’s options. Third, the condition of Byrd’s colon was no worse after steroid therapy than before. Fourth, Byrd actually improved symptomatically after steroid therapy, even though his colon had not been able to heal.
*318 Finally, the opinion of Dr. Naurang M. Agrawal,[2] Byrd’s expert gastroenterologist, was that Byrd did indeed have ulcerative colitis in January 1987.[3] In other words, the plaintiffs own expert agreed with the diagnosis made by Dr. Engelhardt. Dr. Agrawal stated that had he been the treating physician, he may well have initiated steroid therapy just as did Dr. Engelhardt. Further, Dr. Agrawal testified that if Byrd was experiencing a recurrence of herpetic colitis or proctitis in January 1987, his condition should have deteriorated within 24 to 48 hours of the initiation of steroid therapy, which did not happen in this case. Dr. Agra-wal essentially agreed with everything Dr. Engelhardt did, both in diagnosis and in treatment, given the factual circumstances revealed in the medical records.
Byrd’s evidence seems to gloss over the standard of care issue. No general surgeon testified as to the standard of care applicable to Dr. Engelhardt, as required by Felice, supra. Nor did any of the physicians who testified, none of whom were surgeons other than Dr. Engelhardt, even suggest what the standard of care may have been. All we can discern from the record is that Byrd attempted to prove that Dr. Engelhardt should have tested him for herpetic proctitis or colitis prior to instituting steroid therapy. No witness agreed with this proposition. In fact, the evidence proved the opposite: Byrd’s condition required immediate steroid therapy or surgery, and the only adequate test for herpetic proctitis could not be performed because of the condition of Byrd’s colon. The record does not support the argument that the standard of care applicable to Dr. Engelhardt required testing for her-petic proctitis.
The plaintiff also failed to meet the remaining criteria of his burden of proof. Dr. Agrawal’s agreement with Dr. Engelhardt’s diagnosis and treatment shows that the standard of care, whatever it may have been, was not violated. Additionally, on the causation question, there was no evidence even suggesting that steroid therapy led to the need for a colectomy, as the trial judge stated in his reasons.[4] After reviewing the record, we conclude the plaintiff did not meet the burden of proof required in a medical malpractice case. Accordingly, the trial court’s ruling cannot stand. See, Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th Cir.1991), and Peters v. ABC Insurance Co., 552 So.2d 430 (La.App. 4th Cir.1989).
Our decision on the merits of this case obviates the need for any discussion of the procedural issue raised by the State concerning the trial court’s alleged error in granting relief upon a cause of action not properly raised in the pleadings. We refer the reader to the cases of Tillman v. Malmay, 577 So.2d 828 (La.App. 3d Cir.1991) and Charlido, Inc. v. Superior Oil Co., 469 So.2d 448 (La.App. 3d Cir.1985), for a discussion of this issue and suggest that the rationale adopted in those cases may have been dispositive of the similar question presented herein.

DECREE

For the foregoing reasons, the judgment of the trial court is reversed and set aside. Judgment is rendered in favor of the State of Louisiana, through the Department of Public Safety and Corrections and the Department of Health and Human Resources, dismissing the petition of Eugene Byrd with prejudice. Costs are assessed against Eugene Byrd.
REVERSED AND RENDERED.

. The trial judge's statement that Byrd "presently has a colostomy” is incorrect.

. Dr. Agrawal was originally hired as an expert by the defendants, but he testified at trial as an expert for the plaintiff.

. This same opinion was voiced by Dr. Harrington, Byrd’s treating gastroenterologist at Charity Hospital, who also reviewed Byrd’s medical records from the January 1987 hospitalization at Huey P. Long Hospital. No other physicians were even questioned about Dr. Engelhardt’s alleged malpractice.

.The trial judge's conclusion, that "had a correct diagnosis [of herpetic proctitis] been made, plaintiff’s condition could have been brought under control ...,” is not supported by any evidence whatsoever.